IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOY LYNN SINGLEY, | CASE NO. 4:16-cv-000400-JED-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |

## **REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Joy Lynn Singley ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

### **I. STANDARD OF REVIEW**

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount

of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.     Procedural History**

On April 2, 2013, Plaintiff originally filed a claim for disability insurance benefits, and on March 3, 2014, Plaintiff filed a claim for supplemental security income benefits, alleging disability as of July 29, 2012. (Tr. 141).

An administrative law judge ("ALJ") held a hearing and issued a decision on February 4, 2015, finding Plaintiff not disabled. (Tr. 141-51). On May 11, 2016, the agency's Appeals Council denied Plaintiff's request for review, and this appeal followed. (Tr. 1-6).

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges two errors: (1) the ALJ did not properly assess Plaintiff's mental impairments; and (2) the ALJ erred in finding Plaintiff could perform work at Step Five. (Pl. Br. at 1, Doc. 15).

3

A.  **Plaintiff's Mental Impairments**

1.  **Family and Children's Services**

Plaintiff contends the ALJ failed to address the diagnosis by Family and Children's Services that Plaintiff has "mdd rec sev w/pf" (major depressive disorder recurrent with psychotic features). (Pl. Br. at 2). The ALJ devoted the majority analysis in the decision to reviewing Plaintiff's mental impairments.

> In activities of daily living, [Plaintiff] has moderate restriction. Although [Plaintiff] can prepare meals and perform personal care without assistance, she has panic attacks and keeps to herself. In social functioning, [Plaintiff] has moderate difficulties. She does not like to be around people and cannot babysit her grandchildren, especially if she is without medication. With regard to concentration, persistence, or pace, [Plaintiff] has moderate difficulties. She is often overwhelmed and experiences an inability to function. As for episodes of decompensation, [Plaintiff] experienced one episode of decompensation of extended duration. In 2012, [Plaintiff] was arrested and hospitalized at Patton State Hospital after being accused of elder abuse. …
>
> Family and Children's Services case management records show that she was seen regularly in 2013. In June 2013, she presented for a work-in med check and said the Celexa helps her anxiety but not her depression … In October 2013, she was seen for medication management and reported doing … well on Celexa, not so well on Remeron. Her diagnosis was major depressive disorder, recurrent. In May 2014, [Plaintiff] reported that she was bipolar and PTSD … In August 2014, she again reported being depressed and anxious, with her depression better and anxiety coming up every once in a while. …
>
> Patton State Hospital records show [Plaintiff] was admitted October 22, 2012 and discharged on December 10, 2012. … She stated she had no depressive mood symptoms, no paranoid thoughts, no delusions; no auditory or visual hallucinations … she was considered for Celexa 20 mg to control her anxiety symptoms so she can be coherent and rationally participate in her legal proceedings. … It helped her to control her anxiety … Her thought processes were good and her thought content showed no paranoia, thoughts or delusions, perceptual alterations or auditory hallucinations. … Her discharge diagnoses were anxiety disorder, NOS …
>
> [O]n June 15, 2013, Erin Kratz, M.D., [conducted a consultative examination at the request of Oklahoma Disability Determinations Service (DDS).] [Plaintiff] presented with a chief complaint of anxiety for at least 15 years. … Dr. Kratz [diagnosed] anxiety and panic disorder; COPD; tobacco abuse; and polyarthralgia.

4

> [O]n October 8, 2013, Heather Kobel, Ph.D., licensed clinical psychologist, [conducted a consultative examination at the request of DDS]. [Plaintiff] presented with a complaint of anxiety. She reported she last worked in June 2012 at Wal-Mart and left that job to go to California to care for her ailing father. … She reported she was incarcerated for elderly abuse from July 2012 through December 2012 and was on probation for that offense until 2015. … [S]he has experienced both depression and anxiety since her fiancé was murdered in 1991. Her condition worsened when she took a leave of absence to care for her father. She had a disagreement with her father's wife who accused her of elder abuse and had her arrested. … [S]he had a nervous breakdown while incarcerated and was hospitalized for inpatient psychiatric treatment at Patton State Hospital. She was found to be incompetent to stand trial due to being uncooperative, anxious, and irrational. [Plaintiff] stated she began experiencing panic attacks and both auditory and visual hallucinations. Dr. Kobel's review of Patton State Hospital records indicated no evidence of such hallucinations at the time of admittance. [Plaintiff] denied any recent panic attacks and said she was currently in treatment with Family and Children's Services. … Dr. Kobel [diagnosed] generalized anxiety disorder and depression, NOS.

See (Tr. 144, 146-49). The ALJ reviewed the record, and Plaintiff never reported any paranoid thoughts, delusions, or auditory or visual hallucinations. (Tr. 144, 146-49). When Plaintiff alleged she experienced panic attacks and auditory and visual hallucinations at the state hospital, Dr. Kobel reviewed Patton State Hospital records, and they indicated no evidence of such hallucinations. (Tr. 149).

Plaintiff contends the ALJ erred in failing to find Plaintiff's depression as "depression with psychotic features." (Pl. Br. at 2).

The ALJ found Plaintiff had severe impairments of chronic obstructive pulmonary disease (COPD), depression, and anxiety. (Tr. 143). The ALJ noted Family and Children's Services' case management records show her diagnosis was major depressive disorder, recurrent. (Tr. 146).

Plaintiff states the correct diagnosis was "mdd rec sev w/pf" (major depressive disorder recurrent with psychotic features). (Pl. Br. at 2). Despite omitting the "pf" element of the diagnosis, the ALJ perused the record for evidence of psychotic features, and found none. See (Tr. 144, 146-49).

5

Moreover, there is no evidence that an acceptable medical source ever diagnosed depression with psychotic features (see (Pl. Br. at 2) (citing (Tr. 493) (diagnosis by social worker and counselor), (Tr. 542) (same), (Tr. 548-49) (diagnosis by a nurse practitioner Passmore), (Tr. 564) (same), (Tr. 586) (same), (Tr. 590) (diagnosis by nurse practitioner Cline), (Tr. 592) (NP Passmore), (Tr. 596) (NP Cline))). Only an acceptable medical source—a medical doctor or licensed psychologist—can establish the existence of a medically determinable impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a). See also Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007) (only an acceptable medical source may provide evidence to establish the existence of a medically determinable impairment or a medical opinion, and only an acceptable medical source can be considered a treating source).

Here, neither Sofia Firoz, M.D., a psychiatrist at Patton State Hospital (Tr. 428), nor Dr. Kobel (Tr. 532), diagnosed depression with psychotic features. Even Plaintiff's treatment providers at Family and Children's Services repeatedly observed no delusions, hallucinations, or psychosis. (Tr. 499, 505, 553, 564, 592).

Therefore, the ALJ properly reviewed Plaintiff's depression diagnosis. However, even assuming the ALJ erred by omitting the "pf" (psychotic features) element of the diagnosis in the decision, such error was harmless.

**B.    Step Five – Other Work Plaintiff Could Perform**

    **1.    Effects of Plaintiff's Mental Impairments**

        **a.    SSR 85-15**

Plaintiff states the ALJ erred in finding Plaintiff could perform other work at Step Five. (Pl. Br. at 4). The ALJ found Plaintiff could perform work as a hand packager at the medium level, sorter at the light level, and hand packager at the light level. (Tr. 150).

Plaintiff contends the ALJ did not fully assess Plaintiff's mental impairments under the criteria of SSR 85-15.

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 (S.S.A. 1985). Plaintiff argues Plaintiff's mental impairment prevents her from performing unskilled work due to stress. (Pl. Br. at 5).

In the decision, the ALJ found Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform medium work … [and] can occasionally lift … 50 pounds, frequently 25 pounds, stand and/or walk at least 6 hours in an 8 hour workday and sit at least 6 hours, except … should avoid concentrated exposure to fumes, odors, and gas, and should be limited to simple, repetitive tasks; could relate only superficially with supervisors and co-workers, and should not work with the public.

(Tr. 145). Plaintiff states she isolates herself and has trouble getting along with authority figures. (Pl. Br. at 5). This is consistent with the ALJ's finding that she has social problems, and the ALJ accounted for this by limiting interaction with supervisors, coworkers, and the general public. (Tr. 145).

In <u>Fulton</u>, the Tenth Circuit addressed a plaintiff's argument regarding SSR 85-15, stress, and the RFC:

7

> Mr. Fulton faults the ALJ for not adequately considering how his alleged inability to handle stress bears on his ability to work, particularly regarding the final assembler job. He largely relies on a provision of Social Security Ruling 85–15 stating that "the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons," SSR 85–15, 1985 WL 56857, at *6 (1985). He points to statements he made on his benefits application that he is not good with stress and that stress causes problems with memory, concentration, following instructions, and getting along with others; his mother's similar testimony at the ALJ hearing; a 1999 Red Rock evaluation that he had a "low tolerance to stress," Aplt. App. Vol. III, Admin. R. at 257–58; and Dr. Repanshek's comment that "[h]e seems to become angry and agitated in social situations or when he feels that he is being watched or scrutinized," id. Vol. IV, Admin. R. at 605. But this evidence says nothing about the degree of his limitations with regard to stress, and as we have already said, the ALJ's RFC adequately accounted for Dr. Kendall's opinion that Mr. Fulton can perform simple tasks under ordinary supervision, interact with coworkers and supervisors for incidental work purposes, never interact with the public, and adapt to some work changes. Accordingly, we see no error with regard to stress.

Fulton v. Colvin, 631 F. App'x 498 (10th Cir. 2015) (unpublished)[2]. Similarly, the ALJ limited Plaintiff's RFC to jobs that would avoid a great deal of stress. The proposed jobs of hand packager and sorter are positions with "simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Thus, the ALJ limited Plaintiff to an RFC and jobs with low stress.

### b. RFC to Understand and Complete Simple Instructions

Plaintiff states she is markedly limited in the ability to understand, remember, and carry out <u>detailed</u> instructions. (Pl. Br. at 6) (emphasis added).

The record supports Plaintiff's ability to follow simple instructions. In May 2013, a psychiatrist found Plaintiff could perform simple tasks so long as she did not work with the general public. (Tr. 191). In October 2013, Dr. Kobel observed similarly unremarkable findings: Plaintiff was able to read, write, and follow basic three step instructions; her memory, concentration, and

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

8

attention were adequate; she spoke somewhat slowly; she had fair insight and judgment; and she was of average intelligence. (Tr. 532), see (Tr. 148). In January 2014, after reviewing Dr. Kobel's consultative examination report, a state agency psychologist also found Plaintiff could perform simple work that involved routine supervision, but no work with the public. (Tr. 207, 535).

In the RFC, the ALJ found Plaintiff is limited to <u>simple</u>, repetitive tasks. (Tr. 145) (emphasis added). Plaintiff argues all three jobs stated by the Vocational Expert require <u>detailed</u> instructions. (Pl. Br. at 6) (emphasis added).

In the Dictionary of Occupational Titles ("DOT"), it states Hand Packager, medium and light,[3] and Sorter[4] all require reasoning level two. "[A]pply commonsense understanding to carry out <u>detailed but uninvolved</u> written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." (Packager, Hand, DICOT 920.587-018, 1991 WL 687916; Packing-Line Worker DICOT 753.687-038, 1991 WL 680354; and Sorter, DICOT 753.587-010, 1991 WL 680340) (emphasis added).

In <u>Hackett</u>, the Tenth Circuit found DOT level two reasoning compatible with an RFC for simple and routine work tasks.

> Plaintiff argues that her RFC, as found by the ALJ, is incompatible with jobs requiring a reasoning level of three. The ALJ's findings with regard to Plaintiff's RFC include: "Mentally, [Plaintiff] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." Aplt. App., Vol. II at 32. This limitation seems inconsistent with the demands of level-three reasoning. See <u>Lucy v. Chater</u>, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that a claimant limited to following only <u>simple instructions</u> could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher). We note that level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out <u>detailed but uninvolved</u> written or oral instructions [and d]eal with problems

---

[3] DOT 920.587-018 and 753.687-038.

[4] As the Plaintiff correctly cited in her brief, the job number for Sorter is DOT 753.587-010. The ALJ's decision reflected a different DOT job number.

> involving a few concrete variables in or from standardized situations." DOT, Vol. II at 1011. This level-two reasoning appears more consistent with Plaintiff's RFC.

Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added). Similarly, the Court in Christensen found "simple" instructions and the ability to follow "detailed but uninvolved" instructions in level two reasoning were one in the same.

> According to Plaintiff, the ALJ erred by not resolving the conflict in the VE's testimony that these jobs only require the ability to follow simple instructions but that the reasoning level for these jobs set forth in the DOT requires the ability to understand "detailed but uninvolved" instructions. The Court disagrees …
>
> When the VE testified that SVP level two reasoning requires the ability to understand "detailed but uninvolved" instructions, she was actually clarifying her previous testimony that SVP level two jobs require the ability to follow "simple" instructions by reading the reasoning level verbatim from the DOT. In addition, Plaintiff has not offered any vocational, legal, or other authority showing a discrepancy or inconsistency in the ability to follow "simple" instructions and the ability to follow "detailed but uninvolved" instructions, and the Court declines to find one here.

Christensen v. Colvin, Slip Copy, 2016 WL 6648682 at *6, (D. Kan. Nov. 10, 2016) (emphasis added). In the instant case, the undersigned sees no distinguishable difference between the ability to follow "simple" instructions and the ability to follow "detailed but uninvolved" instructions. Thus, substantial evidence supports the ALJ's RFC, and there is no reversible error in the proposed DOT jobs Plaintiff could perform.

    c.    **GAF Scores**

Plaintiff states the ALJ did not address Plaintiff's low Global Assessment of Functioning ("GAF") scores and moderate limitations. (Pl. Br. at 7). Plaintiff's GAF scores ranged in the low to mid-fifties. (Pl. Br. at 7).

The Tenth Circuit in some cases has faulted the ALJ for failing to discuss a plaintiff's GAF scores or determining whether they were due to occupational factors, see Givens v. Astrue, 251 F. App'x 561, 567 n.4 (10th Cir. 2007); Oslin v. Barnhart, 69 F. App'x 942, 947 (10th Cir. 2003),

10

and others have held that GAF scores may be helpful in formulating residual functional capacity findings, but they are not essential components of accurate findings. See Zachary v. Barnhart, 94 F. App'x 817, 819 (10th Cir. 2004) (citing Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002)). As the Court noted in Lopez v. Barnhart, GAF scores "may indicate problems that do not necessarily relate to the ability to hold a job." 78 F. App'x 675, 678 (10th Cir. 2003). "Thus, standing alone, the GAF score does not evidence an impairment seriously interfering with [a] claimant's ability to work." Id. at 678; see also Eden v. Barnhart, 109 F. App'x 311, 314 (10th Cir. 2004).

The ALJ noted in December 2012, Plaintiff's discharge diagnosis from Patton State hospital was anxiety, NOS, with a GAF score of 50. (Tr. 147). The ALJ noted in October 2013, Dr. Kobel, licensed psychologist, conducted a consultative examination and assessed Plaintiff with a GAF score of 54. (Tr. 148-49). Thus, the ALJ considered Plaintiff's GAF scores, and the GAF score improved following the episode of decompensation.

Plaintiff states the GAF scores and moderate limitations prevent Plaintiff from performing simple work tasks. (Pl. Br. at 7). However, in two recent cases, the Tenth Circuit upheld an ALJ's finding a Plaintiff capable of simple or unskilled work with moderate limitations. See Smith v. Colvin, 821 F.3d 1264, 1269 (10th Cir. 2016); Vigil v. Colvin, 805 F.3d 1199, 1204 (10th Cir. 2015); see also Lee v. Colvin, 631 F. App'x 538, 541 (10th Cir. 2015). Thus, the ALJ's findings were sufficient and did not constitute error.

Substantial evidence supports the ALJ's decision.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than July 5, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on June 20, 2017.

**Gerald B. Cohn**
**United States Magistrate Judge**