# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOY LYNN SINGLEY,  )<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>NANCY A. BERRYHILL,  )<br>Acting Commissioner of the Social  )<br>Security Administration,  )<br>)<br>Defendant.  ) | Case No. 16-CV-400-JED-GBC |

## OPINION AND ORDER

Before the Court is the Report & Recommendation ("R&R") (Doc. 20) of United States Magistrate Judge Gerald B. Cohn on review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying the Plaintiff, Joy Lynn Singley, disability benefits. Judge Cohn recommends that the Court affirm the Commissioner's decision finding Plaintiff not disabled. Plaintiff filed a timely Objection (Doc. 21) to the R&R, and the Commissioner filed a Response (Doc. 22). The Court has reviewed the record and issues de novo.

## I. Background

Plaintiff originally filed a claim for disability insurance benefits on April 2, 2013, and for supplemental security income benefits on March 3, 2014. In both applications, she alleged disability beginning on July 29, 2012. Her claims were denied initially and on reconsideration. A hearing before the Administrative Law Judge (ALJ) was held on November 24, 2014. On February 4, 2015, the ALJ entered findings that are the subject of this proceeding. (*See* R. 141-151). The Appeals Council denied review on May 11, 2016. (R. 1).

Plaintiff claims to be unable to work due to anxiety and panic attacks. (R. 312). The ALJ determined that her chronic obstructive pulmonary disease (COPD), depression, and anxiety were

severe impairments, but that these impairments did not meet or medically equal the severity of a listed impairment. (R. 143-44). The ALJ found that Ms. Singley had the residual functional capacity ("RFC") to perform medium work, except that she should avoid concentrated exposure to fumes, odors, and gas, and that she should be limited to simple, repetitive tasks. (R. 145). He found that she could relate only superficially with supervisors and co-workers, and that she should not work with the public. (*Id.*).

The ALJ found that Ms. Singley is unable to perform her past relevant work as a cashier/checker, but that she could perform jobs that exist in significant numbers in the national economy. (R. 149-50). A vocational expert testified that a person of plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as hand packager and sorter. (R. 150). In light of the foregoing, the ALJ found that Plaintiff was not disabled. (R. 151).

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "It is 'more than a scintilla, but less than a preponderance.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither

reweigh the evidence nor substitute [its] judgment for that of the agency." *Martinez v. Barnhart*, 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## III. Discussion

### A. Diagnosis from Family & Children's Services

Plaintiff first contends that the ALJ did not properly assess the Plaintiff's mental impairments because he failed to consider her diagnosis of major depressive disorder, recurrent with psychotic features. This diagnosis appears throughout Plaintiff's records with Family and Children's Services ("FCS"). It appears on FCS records from April 15, 2013 (R. 493); October 11, 2013 (R. 564, 586); May 6, 2014 (R. 542, 549, 592); January 15, 2014 (R. 553); and August 1, 2014 (R. 596). Most of these records were entered and/or signed by a nurse practitioner (*see* R. 548-549, 553, 564, 586-587, 590, 592-593, 596-597), while two diagnosis reports were signed by a social worker and licensed professional counselor (*see* R. 493-495, 542-545).

Plaintiff's FCS records show that Plaintiff reported experiencing visual and auditory hallucinations as early as April 2013. (R. 493). At that time, she reported seeing shadows and people approximately 9-10 times a month for six months, as well as hearing whispers or noise 4-5 times a month for about a year. (*Id.*). She also reported believing that law enforcement was "against her." (*Id.*). In October 2013, she reported hearing noises "like a pipe busted." (R. 586). In January 2014, she again claimed to have auditory hallucinations. (R. 553). In May 2014, she reported that she "constantly hears noises" and "sometimes hears voices." (R. 542). She reported that she sees things "no one else does." (*Id.*). Lastly, in August 2014, she appears to have denied having any auditory or visual hallucinations. (R. 596).

The Tenth Circuit has been clear that "an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) (finding reversible error where the ALJ failed to consider the claimant's borderline personality disorder). Yet, "[o]nly 'acceptable medical sources' can provide evidence to establish the existence of a medically determinable impairment, only they can provide medical opinions, and only they can be considered treating sources." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (internal citations omitted). Under the Social Security regulations, "acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1502(a), 416.902(a).

Plaintiff cites *Salazar v. Barnhard*, 468 F.3d 615 (10th Cir. 2006), and *Bourgeois v. Colvin*, Case No. 13-CV-503-JED-FHM, to support his argument, but these cases are clearly distinguishable. In *Salazar*, the claimant had received diagnoses of borderline personality disorder from two acceptable medical sources, yet the ALJ failed to consider the disorder in his disability determination. 468 F.3d at 621-22. Similarly, in *Bourgeois*, a physician had diagnosed the claimant with borderline personality disorder, and the ALJ failed to consider it. *See* Doc. 29 in Case No. 4:13-CV-503-JED-FHM. In this case, no acceptable medical source ever diagnosed Plaintiff with a depressive disorder with psychotic features. The only depression-related diagnosis Plaintiff received from an acceptable medical source is Dr. Heather Kobel's diagnosis of depression, NOS [not otherwise specified]. (R. 532). Thus, the ALJ's determination that depression is one of Ms. Singley's medically determinable impairments (*see* R. 143) is properly supported by an acceptable medical source. Listing depression with psychotic features as a

medically determinable impairment at step three would have been error, as that specific diagnosis was never made by an acceptable medical source.

This does not mean that the ALJ could ignore the evidence of symptoms that presumably prompted FCS personnel to add the "psychotic features" specifier to their depression diagnosis. Hallucinations are sufficiently related to depression that the ALJ needed to consider this symptom.[1] In other words, Ms. Singley's depression could reasonably be expected to produce her reported hallucinations.

Once it is determined that an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms, the ALJ must evaluate the intensity and persistence of the person's symptoms and determine the extent to which these symptoms limit her ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, *2. As Plaintiff points out, evidence from medical sources who are not acceptable medical sources can be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, *2 (rescinded effective March 27, 2017).[2]

---

[1] Under the DSM-IV-TR and the more recent DSM-5, "with psychotic features" is a specifier that can be added to certain depressive disorder diagnoses, such as major depressive disorder. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders [DSM-IV-TR] 20 (Text Revision 4th ed. 2000); Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders [DSM-5] xvii (5th ed. 2013). No specifiers, including the "with psychotic features" specifier, can be applied to a diagnosis of "depression, NOS." DSM-IV-TR at 20. Thus, such a diagnosis does not rule out psychotic symptoms—it simply does not convey such specific information about a person's symptoms. Notably, the "with psychotic features" specifier is not available for many other categories of diagnoses, such as anxiety disorders. DSM-IV-TR at 21; DSM-5 at xviii-xix.

[2] It appears that the rule changes prompting the rescission of SSR 06-03p only apply to claims filed on or after March 27, 2017. Because Ms. Singley filed her claims well before this date, the Court will apply SSR 06-03p to her case.

In *Frantz v. Astrue*, the Tenth Circuit reversed and remanded a case in part because the ALJ erred in failing to discuss the weight accorded to the opinion of a clinical nurse specialist ("CNS"). 509 F.3d at 1301-02. In that case, the CNS had indicated on multiple occasions that the claimant was unable to work due to her irritability, poor focus, difficulty in coming to work on a reliable basis, numerous mistakes, and handling stress in the workplace. *Id*. at 1300. The CNS had specifically stated that the claimant's ability to work was "highly questionable due to her mood problems" and that "[h]er mistakes are likely related to poor concentration resulting from depression." *Id*. at 1300-01. Even though the CNS was not an acceptable medical source under the Social Security regulations, the Court determined that the ALJ erred in not discussing "what weight he gave to her opinion on the severity of [the claimant's] limitations and on the functional effect those limitations have on her overall ability to work." *Id*. at 1302.

Unlike in *Frantz*, the FCS medical sources in this case did not opine on any functional limitations caused by Ms. Singley's mental impairments. The one instance the Court can find that reveals an opinion regarding Ms. Singley's ability to work is nurse practitioner Rebecca Cline's note from August 2014 that states, "Client['s] mood and anxiety might improve with a low stress employment." (R. 596). This statement does not undermine the ALJ's findings; instead, it bolsters the ALJ's decision finding Plaintiff not disabled.

Moreover, the ALJ noted in his decision that he "considered all symptoms," and it is the general practice in this circuit "to take a lower tribunal at its word when it declares that it has considered a matter." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

In sum, the Court agrees with Magistrate Judge Cohn in finding no reversible error in how the ALJ handled Plaintiff's diagnoses by "other" medical sources.[3] The Court disagrees with one statement from the R&R, however. In discussing the ALJ's consideration of Plaintiff's mental impairments, the R&R states that the ALJ "reviewed the record, and Plaintiff never reported any paranoid thoughts, delusions, or auditory or visual hallucinations." (Doc. 20 at 5). This is not an accurate statement, as Plaintiff reported hallucinations on several occasions. The Court finds that taking this sentence out will not have a substantive effect on the R&R.

**B.     Dr. Kobel's Observations**

Plaintiff also objects to the ALJ's alleged failure to consider certain details from Dr. Heather Kobel's consultative evaluation report. In that report, Dr. Kobel stated that Plaintiff "presented as depressed and lethargic with restricted affect." (R. 532). Dr. Kobel further noted that Plaintiff was "somewhat socially awkward," that she "exhibited poor social skills," that she was "somewhat eccentrically dressed," and that her attitude was "somewhat guarded." (R. 530, 532).

The Court finds no reversible error here. First, the ALJ specifically mentioned each of Dr. Kobel's observations in his decision, except for one—the note regarding Plaintiff's dress. (*See* R. 148-49). Leaving out this one detail was not error, as the ALJ "is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ must discuss the evidence supporting his decision, "as well as significantly probative evidence he rejects." *Id*. at 1010. The Court does not find the observation regarding her somewhat eccentric

---

[3] Plaintiff also argues that by not considering the FCS diagnosis of depression with psychotic features, "the ALJ failed to fulfill his duty to fully develop the record." (Doc. 21 at 3). This argument is unpersuasive, given that the ALJ in this case obtained a consultative examination by Dr. Kobel, a licensed clinical psychologist. (R. 530-34).

7

outfit to be significantly probative. More importantly, the Court finds that Dr. Kobel's observations do not undermine or contradict the ALJ's RFC limiting Plaintiff to medium work with simple, repetitive tasks and limited interaction with others.

C. **Plaintiff's Behavior at the Hearing**

Plaintiff also contends that the ALJ erred in failing to analyze her behavior at the hearing before him. She argues that her expressed feeling that her attorney was "not on her side" could be indicative of paranoia. (Doc. 21 at 2).

It is clear from the hearing transcript that Ms. Singley became quite frustrated when asked questions at the hearing. At one point, she stated that she felt like her attorney was "fighting" with her and "not working with [her]." (R. 169). The Court finds this to be consistent with the ALJ's RFC limiting Plaintiff to work that involves limited interaction with other people. Also, it appears from the hearing transcript that Ms. Singley did not take her medicine the morning of the hearing and that she has increased anxiety and panic when she does not take this medicine. (R. 165-66). In discussing his RFC assessment, the ALJ specifically noted that Ms. Singley "has not attempted to function in any work format while taking her medication" and that "[t]here is every indication that she could do some work activities." (R. 149).

D. **Weighing Medical Opinions**

Citing *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004), Plaintiff states, "As for the Magistrate's reliance on the non-examining DDS physicians, the law provides that the opinion of the doctor who has never examined the Plaintiff is entitled to less weight." (Doc. 21 at 4).[4]

"Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight."

---

[4] The Court assumes that Plaintiff meant to refer to the ALJ here, and not the Magistrate.

*Tietjen v. Colvin*, 527 F. App'x 705, 708 (10th Cir. 2013) (unpublished); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2007). In some circumstances, however, the opinion of a non-examining source "may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (superseded by SSR 17-2p, 2017 WL 3928306 (effective March 27, 2017)).

Here, Plaintiff has not identified an opinion of a treating physician in the Record.[5] As for the opinions of the examining consultants, it is not clear that the ALJ gave Dr. Erin Kratz's and Dr. Heather Kobel's opinions less weight than the opinions of the non-examining consultants. Instead, the ALJ states in his decision that his RFC assessment "is supported by . . . the opinions of the medical reviewers <u>and</u> examiners." (R. 149) (emphasis added). Indeed, Dr. Kobel found in her report that Ms. Singley was able to follow basic, three-step instructions; her memory, concentration, and attention were adequate for the duration of the consultative evaluation; her judgment and insight seemed fair; and that she was likely capable of managing her own finances. (R. 532). Dr. Kobel's findings regarding the Plaintiff's depressed and lethargic presentation, restricted affect, and poor social skills are represented in the RFC's limitations regarding social interactions and simple, repetitive tasks. The Court finds no error in the ALJ's weighing of the medical opinions in the Record.

E.     **SSR 85-15**

Lastly, the Plaintiff contends that the ALJ and Magistrate Judge failed to properly consider SSR 85-15, which states, in relevant part, that "[t]he reaction to the demands of work (stress) is

---

[5] The federal regulations define medical opinions as "statements from <u>acceptable medical sources</u> that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (emphasis added).

9

highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances." SSR 85-15, 1985 WL 56857, *6. It further provides that "the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs." *Id*. Plaintiff points to her tendencies to isolate herself, be suspicious of authority figure, and have inappropriate social interactions. (Doc. 21 at 4). The Court agrees with Judge Cohn's assessment that ALJ's RFC assessment adequately accounted for these tendencies in limiting her interaction with supervisors, coworkers, and the general public. (*See* R. 145). The Court also agrees that the ALJ accounted for any alleged inability to handle stress by limiting her RFC to jobs that entail only "simple, repetitive tasks." (*See id*.)

IV. **Conclusion**

Having found no reversible error in the ALJ's decision, upon concluding that the ALJ applied the correct legal standards and the decision is supported by substantial record evidence, and agreeing with Judge Cohn's R&R, the Court overrules Plaintiff's Objection (Doc. 21). Accordingly, the Court **accepts** the R&R (Doc. 20) with the exception of the following sentence on page 5: "The ALJ reviewed the record, and Plaintiff never reported any paranoid thoughts, delusions, or auditory or visual hallucinations." The Court accepts the recommendation that the Commissioner's decision finding plaintiff not disabled be affirmed. Accordingly, the Commissioner's decision is **affirmed**. A separate Judgment will be entered forthwith.

**DATED** this 20th day of March, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE